IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JULIA P. SIMMONS, EXECUTRIX OF THE ESTATE OF ORITA WELLS CONEY, | |
| Plaintiff, | CIVIL ACTION NO. 4:18-cv-00055 |
| v. | |
| HARLEYSVILLE INSURANCE COMPANY a/k/a HARLEYSVILLE MUTUAL INSURANCE COMPANY; and ON YOUR SIDE NATIONWIDE INSURANCE AGENCY INCORPORATED, | |
| Defendants. | |

**O R D E R**

This action is premised upon conduct allegedly committed by non-party Robert Moore while he was serving as the guardian of Plaintiff's decedent's property. (Doc. 1-1, pp. 4–13.) Plaintiff Julia P. Simmons (acting as executrix of decedent Orita Coney's estate) asserts that when Moore became the guardian of Coney's property, he posted—as he was required to do—a surety bond, which was issued by Defendant Harleysville Insurance Company (hereinafter "Harleysville"). (Id. at pp. 5–6.) Plaintiff alleges that Moore breached his fiduciary duties as Coney's guardian and that the estate is now entitled to recover from Harleysville, and from On Your Side Nationwide Insurance Agency Incorporated (which she claims is Harleysville's successor-in-interest),[1] the amount of the bond plus bad faith damages. (Id. at pp. 7–13.) Presently

---

[1] In her Complaint, Plaintiff asserts that On Your Side Nationwide Insurance Agency Incorporated purchased Harleysville Insurance Company. (Doc. 1-1, p. 6.) In its Motion for Summary Judgment, Defendants state that Nationwide Mutual Insurance Company is the successor to Harleysville Insurance Company following a merger of the two organizations, and that "Plaintiff appears to be confusing

before the Court is Defendants' Motion for Summary Judgment, in which they argue that summary judgment is appropriate because Plaintiff has not secured a judgment against Moore or included him as a party in this suit. (Doc. 82; see also doc. 83, pp. 7–10.) Plaintiff has filed her own Motion for Summary Judgment, asserting that she should be granted summary judgment on her claims because it is undisputed that Moore breached his fiduciary duty as guardian of Coney's property, and Defendants are jointly and severally liable for Moore's alleged actions. (Doc. 84, pp. 11–17, 19–21.) For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, (doc. 82), and **DENIES** Plaintiff's Motion for Summary Judgment, (doc. 84). The Court also **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 93.) [2]

---

Nationwide Mutual Insurance Company and On Your Side Insurance Agency, Incorporated." (Doc. 83, p. 1 n.1.) Plaintiff does not respond to this. Because, for the reasons explained in this Order, Plaintiff's claims fail regardless of which entity is Harleysville's successor, the Court need not address the issue of Harleysville's true successor in interest.

[2] Plaintiff denies several of the statements in Harleysville's Statement of Material Facts but fails to provide citations to support most of these denials. (Doc. 89-2.) In addition, even when Plaintiff does reference the record, she does so in a very general fashion, such as stating "See Plaintiff's Exhibits 'A' – 'D.'" (See id., p. 2.) This is insufficient to create a genuine dispute of material fact. See, e.g., Washington v. Fanning, No. 1:16-cv-107, 2019 WL 1117917, at 4 n.9 (S.D. Ga. Mar. 11, 2019) ("Plaintiff's denials and assertions in her response to Defendant's statement of material facts . . . provided without citations to particular parts of materials in the record, are insufficient to satisfy her aforementioned obligations and, therefore, need not be considered by the Court."); Sutherland v. St. Lawrence, No. 4:07-cv-096, 2009 WL 890639, at *1 (S.D. Ga. Apr. 2, 2009) ("In other words, Plaintiff had a duty to respond to the Statement of Undisputed Facts . . . by directing this Court's attention, through citations to the record, to actual evidence suggesting that these facts are not true."). Therefore, the Court deems the Defendants' material facts admitted where Plaintiff provides no citation to properly dispute them. Where the Plaintiff has at least referenced an exhibit that she believes contains facts to support a material dispute, the Court has reviewed that document to at least attempt to determine whether there is factual support for Plaintiff's assertions. See Fils v. City of Aventura, 647 F.3d 1272, 1282 (11th Cir. 2011) (noting that the district court has discretion in determining how strictly to interpret its local rules). In addition, Plaintiff also submitted her own Statement of Material Facts within the same document as her Motion for Summary Judgment. (Doc. 84, pp. 1–8.) Southern District of Georgia Local Rule 56.1 states that a party moving for summary judgment should file a "*separate*, short, and concise statement of material facts." However, the far more concerning deficiency with Plaintiff's Statement of Material Facts is that Plaintiff again fails to cite to the record to support her factual statements. (Id.) Out of forty-six separate asserted facts, Plaintiff cites to the record to support only one of them, and that citation merely states "See Deposition of Robert Moore, Plaintiff's Exhibit 3." (Id. at p. 2.) Local Rule 56.1 requires that "[e]ach statement of material fact [in support of a motion for summary judgment] shall be supported by a citation to the record." This requirement "protects judicial resources by making the

## BACKGROUND

I.     **Factual Background**

In April 2000, Moore and another relative filed, in the Probate Court of Chatham County, a petition for the appointment of a guardian for their aunt, Orita Coney, alleging that Coney was mentally incapacitated.  (Doc. 82-2, pp. 3–14.)  In June 2000, the Probate Court appointed Moore as guardian of Coney's property.  (Doc. 1-1, p. 47; doc. 82-3, p. 7.)  By virtue of this appointment, Moore was required to post a bond.  (Doc. 82-1, p. 3; doc. 89-2, p. 2.)  On June 8, 2000, Harleysville issued a "Bond of Administrators, Guardians & Executors, Etc." (hereinafter, the "bond").  (Doc. 82-2, pp. 16–17; doc. 82-1, p. 4.)  It provided that "[t]he condition of the above bond or obligation is such, that whereas the said Robert Moore has been named and appointed as Guardian for Incompetent Adult Orita Wells Coney." (Doc. 82-2, p. 16.)  The Probate Court issued "Letters of Guardianship of the Property of Incapacitated Adult," which instructed Moore that he could not "spend any of the principal (corpus) for any purpose without a court order." (Doc. 1-1, p. 47.)  The instructions also stated that "Georgia law requires you to file with this Court an annual return, showing all receipts and disbursements, accompanied by an affidavit certifying that the original vouchers (checks) have been compared with the items listed on the return, and that the return is correct."  (Id.)

On July 5, 2001, the deputy clerk for the Chatham County Probate Court notified Moore that his "annual fiduciary accounting" was due.  (Doc. 89-4, p. 2.)  The deputy clerk sent a follow-

---

parties organize the evidence rather than leaving the burden upon the district judge." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotation and citation omitted) (referring to an analogous local rule from the Northern District of Georgia).  Plaintiff's failure to provide record citations provides sufficient grounds to rule against her on the instant motions.   Moreover, most of the asserted statements in Plaintiff's Statement of Material Facts deal with Moore's alleged violation of his fiduciary duty which, as the Court will explain below, is ultimately immaterial to the Court's decision to issue judgment in favor of Defendants in this case.

up letter a few months later informing Moore that, after reviewing the fiduciary accounting, the Probate Court needed to see some receipts. (Id. at p. 4.) Specifically, the deputy clerk asked Moore to provide receipts for "the large amount of money spent on the house repairs." (Id.) The letter also reminded Moore that he had to "file a Petition with the court asking permission" before spending large amounts of Coney's money. (Id.) The record is silent as to whether Moore responded to this letter. However, Moore stated during his deposition that he did not inventory Coney's property. (Doc. 89-4, p. 6.)

Coney died on February 27, 2006. (Doc. 82-1, p. 4; doc. 89-2, p. 2.) Plaintiff became the executrix of Coney's estate. (Doc. 82-4, pp. 6–7; doc. 82-1, p. 5; doc. 89-2, p. 2.) In May of 2015, Plaintiff sent a letter to Harleysville to provide "formal notice of [her] claim against the surety bond issued by Harleysville Mutual Insurance Company." (Doc. 89-4, p. 11.) The letter stated that Moore had "failed to properly discharge his duties and misappropriated certain assets" as guardian of Coney's property and "failed to prepare the statutorily mandated inventory of Orita Coney's assets." (Id.) Plaintiff then filed a claim with Harleysville's third-party claims administrator. (Id. at pp. 13–14, 18.) On November 25, 2016, the claims administrator sent Plaintiff a letter explaining that "Harleysville must deny the claim . . . [because, a]ccording to Harleysville's investigation and the documents reviewed, [Plaintiff] has not shown any evidence of wrong-doing by Mr. Robert Moore." (Id. at p. 18.)

## II. Procedural History

Plaintiff originally filed this action against Defendants in the Superior Court of Chatham County on February 5, 2018. (Doc. 1-1, pp. 4–13.) Plaintiff did not name—and still has not named—Moore as a defendant.[3] Defendants removed the case to this Court. (Doc. 1.) Both

---

[3] At the time of his deposition, Moore was living in Savannah, Georgia. (Doc. 82-3, p. 6.) He has lived at his current address in Savannah for the past twenty-five years. (Id.)

4

Plaintiff and Defendants have filed their own respective Motions for Summary Judgment.  (Doc. 82; doc. 84.)  Both sides also filed a Response, (doc. 88; doc. 89), and Defendants filed a Reply, (doc. 92).  After both parties filed and briefed the Motions for Summary Judgment, Plaintiff filed a Motion for Leave to File an Amended Complaint.  (Doc. 93.)  Defendants then filed a Response to that Motion.  (Doc. 96.)

## DISCUSSION

**I.     Plaintiff and Defendants' Motions for Summary Judgment**

### A.     Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party

discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

**B.     Analysis**

Plaintiff claims that Defendants are "obligated to the Estate of Orita Wells Coney for Robert Moore's violation of his fiduciary duties," and her Complaint cites specific Georgia statutes—some that she claims Moore violated and others that she claims entitle her to relief against the Defendants for Moore's actions. (Doc. 1-1, pp. 6–12.)

While Moore was appointed, in 2000, as "guardian of the property" belonging to Coney, the Georgia legislature has since (effective July 1, 2005) substituted "the term 'conservator' . . . for the office formerly designated as the 'guardian of the property' of an incapacitated adult." In re Hudson, 685 S.E.2d 323, 324 n.2 (Ga. Ct. App. 2009) (citing O.C.G.A. § 29–5–1 (2004); Ga. L. 2004, pp. 161, 251–252, § 1 (revised O.C.G.A. § 29–5–1)); see also In re Longino, 636 S.E.2d 683, 684 n.1 (Ga. Ct. App. 2006). In conjunction with the new terminology, the legislature also enacted several conservator-specific statutes, which are relevant here. Pursuant to that statute,

"[i]f a conservator commits a breach of fiduciary duty or threatens to commit a breach of fiduciary duty, a ward or an interested person on behalf of the ward shall have a cause of action as appropriate [t]o recover damages."  O.C.G.A. § 29–5–93(a)(1).[4]  Georgia law also provides that, "[i]f the court finds that the conservator is liable to the ward, the court shall enter a judgment against the conservator and any surety in the amount of such liability."  O.C.G.A. § 29–5–63.

Thus, Plaintiff argues that if she can show that Moore violated his fiduciary duty then Defendants can be held liable because Harleysville issued the surety bond.  (Doc. 89, p. 4; doc. 84, pp. 19–21.)  However, in their Motion for Summary Judgment, Defendants argue that Plaintiff cannot recover from them for Moore's actions—even if there is evidence that he violated his fiduciary duty—because Plaintiff has not obtained a judgment against Moore or included him as a defendant in this action.  (Doc. 83, pp. 7–10.)  Plaintiff, on the other hand, argues that, while she had the *option* to do so, she was not *required* to obtain a judgment against Moore or to include him as a defendant in this case.  (Doc. 89, p. 3.)

The parties' dispute hinges in large part on their conflicting interpretations of O.C.G.A. § 29–5–46, which provides:

> The conservator and any surety shall be held and deemed joint and several obligors and may be subjected jointly and severally to liability in the same action.  When a conservator moves beyond the limits of this state, dies, and leaves an unrepresented estate, or is in a position that an attachment may be issued as against a debtor, any party in interest or any person having demands against that conservator in the conservator's representative capacity may institute an action against any one or more of the sureties on the bond of the conservator in the first instance, without first obtaining a judgment against the conservator in that person's representative capacity.

---

[4] As this is a diversity action and neither party argues that any law other than Georgia law should apply, the Court applies Georgia law.  See, e.g., Grange Mut. Cas. Co. v. Woodard, 826 F.3d 1289, 1295 (11th Cir. 2016) ("Federal courts sitting in diversity apply the substantive law of the forum state."); Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("[B]ecause the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum . . . controls.") (citation omitted).

O.C.G.A. § 29–5–46. Plaintiff argues that the statute's use of the word "may" in both of its sentences means that she was permitted—but not *required*—to include Moore in this action (as she admittedly had not already obtained a judgment against him). (Doc. 89, p. 3.)

It is true that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion[, but t]his common-sense principle of statutory construction is by no means invariable." United States v. Rodgers, 461 U.S. 677, 706 (1983). Indeed, under Georgia law, "[t]he word 'may' has frequently been held to mean 'must.' The use of the permissive word 'may' is always to be considered in connection with its context and subject matter." United States v. Wilson, 853 F.2d 869, 872 n.4 (11th Cir. 1988) (quoting Wilson-Weesner-Wilkinson Co. v. Collier, 8 S.E.2d 171, 176 (Ga. Ct. App. 1940)). In this case, after stating that the conservator and surety "may be subjected jointly and severally to liability in the same action," the statute provides, in the next sentence, an exception provision; it states that, in certain (specified) situations, a party need not obtain a judgment against the conservator in order to assert a claim against the surety.[5] Thus, the plain text of the statute indicates that a plaintiff may (i.e. is permitted to) institute a direction action against only a surety without obtaining a prior or contemporaneous judgment against the conservator *only* in the situations spelled out in the second sentence. Thus, in all situations *other than* those specified in the second sentence, a judgment against the conservator "must" be obtained, and—pursuant to the first sentence of the statute—that judgment *may* be obtained in the same action (as opposed to a prior, separate action); to interpret it otherwise would render the exceptions and situations specified in the second sentence of the statute meaningless. See State v.

---

[5] The record shows that Moore is alive and living in Savannah, Georgia, (doc. 82-4, p. 60), and there is no evidence showing that he is "in a position that an attachment may be issued as against a debtor," O.C.G.A. § 29–5–46. Accordingly, Plaintiff has not shown that any of the exceptions described in the second sentence of O.C.G.A. § 29–5–46 apply to this case.

English, 578 S.E.2d 413, 348 (Ga. 2003) ("This Court is to construe the statute to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless.").

In addition to the statute's plain text, precedent from Georgia's appellate courts supports interpreting "may" to mean "must" in this instance. As described above, in 2005, as part of the comprehensive revision of Title 29 (Guardian and Ward), . . . the term 'conservator' was substituted for the office formerly designated as the 'guardian of the property' of an incapacitated adult" and the statute in dispute here, O.C.G.A. § 29–5–46, was enacted. See In re Hudson, 685 S.E.2d 323, 324 n.2 (Ga. Ct. App. 2009) (citing O.C.G.A. § 29–5–1 (2004); Ga. L. 2004, pp. 161, 251–252, § 1 (revised O.C.G.A. § 29–5–1)). Given its infancy—at least compared to similar statutes pertaining to suits against sureties for other types of fiduciaries—there is a dearth of case law interpreting O.C.G.A. § 29–5–46. There is, however, abundant case law interpreting analogous statutes regulating suits on administrators' and guardians' surety bonds.[6] The Court turns to that case law for guidance.

In 1955, the Georgia Court of Appeals offered the following historical overview of statutes regulating suits on administrators' and guardians' surety bonds:

> [P]rior to 1820 it was necessary to bring three actions in order to recover on the bond of an administrator or a guardian—first against the fiduciary in his representative capacity, secondly against him in his individual capacity, and thirdly against the sureties themselves. The act of 1820, while intended to obviate the necessity for more than one suit, was so construed by the courts that, while an action

---

[6] Prior to the Code of 1863, suits against sureties on administrators' and guardians' bonds were covered together in one section of the Code. See Am. Sur. Co. of New York v. Macon Sav. Bank, 132 S.E. 636, 638 (Ga. 1926). In the Code of 1863, however, they were separated into two sections of the Code, with one section covering suits against sureties on administrators' bonds and another covering suits against sureties on guardians' bonds. See id. Then, in 2005, as described above, the legislature substituted the term "conservator" in place of "guardian of the property," and a new section, covering suits against sureties on conservators' bonds, was added to the Code, see O.C.G.A. § 29–5–46. It would thus seem that, until 2005, a suit against a "guardian of the property" of an incapacitated adult, such as Moore, would have been governed by the code section covering suits on guardians' bonds, which is discussed at length herein.

9

>could thereafter be brought against the fiduciary in his representative and individual capacities simultaneously, it was still necessary to obtain judgment therein before suing the sureties. This deficiency was remedied, as pointed out in [Bailey v. McAlpin, 50 S.E. 388 (Ga. 1905)], by the Act of 1851-2, Ga.L.1851-2, p. 235, which was passed for that purpose. [The version of the statute reviewed by the Bailey court read as follows: "The administrator and his sureties shall be held and deemed joint and several obligors, and may be sued as such in the same action, and if the administrator is beyond the jurisdiction of this state, or is dead, and his estate unrepresented, or is in such position that an attachment may be issued against him, the sureties or any one or more of them may be sued. No prior judgment, establishing the liability of the administrator or a devastavit by him, shall be necessary before suit against the sureties on the bond." Ga. Code 1863, § 2470.] The Bailey case dealt with an administrator's bonds, but what was therein held was adopted as being equally applicable in actions on guardian's bonds in American Surety Co. of New York v. Macon Savings Bank, [132 S.E. 636 (Ga. 1926)]. Any person at interest who might otherwise have sued a guardian and his surety, or an administrator and his surety, and recovered against the surety in a separate action may by virtue of this statute now sue such parties jointly in the same action . . . .

Rogers v. Taintor, 90 S.E.2d 629, 631 (Ga. Ct. App. 1955).

Here, just as in American Surety Co., "it is manifest, by a comparison" of O.C.G.A. § 29–5–46 (at issue in this case) and Section 2470 (at issue in Bailey), "that while the language used in each is somewhat different, the purpose of the codifiers was the same." Am. Surety Co., 132 S.E. at 638. For instance, both statutes provide that the at-issue fiduciary (the "administrator" in Section 2470 and the "conservator" in O.C.G.A. § 29–5–46) and its surety are joint and several obligors and may be sued as such in the same action. And, just as Section 2470 did concerning administrators (*albeit* using slightly different language), O.C.G.A. § 29–5–46 provides that, in specified situations (relating to the status of the conservator), qualified individuals "may" sue a surety without having to first obtain a judgment against the conservator. Given these similarities, the interpretations assigned by the Georgia appellate courts to the statutes concerning guardians and administrators are applicable to O.C.G.A. § 29–5–46.

Georgia's appellate courts have clearly indicated over the years that, in the absence of any of the specific circumstances explicitly provided in the relevant statute, an individual may only

10

recover damages from a surety if the individual obtains a prior or contemporaneous judgment against the fiduciary. For instance, shortly after Bailey was decided, the Georgia Court of Appeals explained that, under the terms of the statute pertaining to suits on guardians' surety bonds, suit could not be brought against the surety alone except in the circumstances prescribed by the statute:

> Under the law as it now stands in this state, *when "the guardian is dead and his estate unrepresented,"* suit *may* be brought on the guardian's bond against his sureties alone. Civ. Code 1895, § 2535. Prior to the act of 1820, suit could not be brought against the surety on the bond until a judgment had been obtained against the guardian. Prince's Digest, p. 44. Under that act both might be joined in the same action, but *no suit could be brought against the surety in the first instance, unless the guardian was without the limits of the state.* But, as stated, the present Code gives the right to sue the surety alone *when the "guardian is dead and his estate unrepresented."*

U.S. Fid. & Guar. Co. v. Davis, 58 S.E. 777, 779 (Ga. Ct. App. 1907) (emphasis supplied). Consistently therewith, in 1935, in discussing the statute pertaining to guardians, the Georgia Supreme Court explained: "The enactment of the law contained in section 3054 of the Code of 1910 did not change the rule as to the necessity of showing a [mismanagement of the assets by the fiduciary] in such case. That section merely *prescribes when suits may be instituted against the surety without joining the guardian . . . ."* Clark v. Nat'l Sur. Co., 178 S.E. 148, 148 (Ga. 1935) (emphasis supplied).

Finally, in Crow v. Martin, 17 S.E.2d 90, 91 (Ga Ct. App. 1941), the Georgia Court of Appeals interpreted former Georgia Code § 49–237, which pertained to guardians. Though Georgia Code § 49–237 did not include the type of language that is currently the first sentence of O.C.G.A. § 29–5–46 (stating that the relevant fiduciary and the surety "may be subjected jointly and severally to liability in the same action"), it contained essentially the same substance as the second sentence of O.C.G.A. § 29–5–46: that, in certain specified circumstances (relating to the status of the fiduciary), a party in interest "may" bring suit against the sureties without first

11

obtaining a judgment against the fiduciary. See Ga. Code § 49–237 (1933).[7] In Crow, the plaintiff initially sued the administrator of the deceased guardian's estate and the surety. 17 S.E.2d at 90. The plaintiff later dismissed the administrator of the guardian's estate from the suit, and the trial court subsequently directed a verdict for the surety. Id. at 91. On appeal, the appellate court upheld the decision because, among other things, it found that "no suit will lie against a surety on a guardian's bond, sued alone, unless one of the exceptions named in Code § 49–237 is shown to exist." Id. The Crow court explained that "[t]he law evidently intends to protect the surety to the fullest extent, and when possible to insure a judgment against the guardian or his representative, either before or at the same time one is rendered against the surety, except in the special cases provided for . . . ." Id.

While all of these cases are based on prior versions of the relevant statutes, the Georgia legislature, in revising the statutes over the years, has notably retained much of the statutes' original language. Case law has made clear that the aim of the revisions has been to enable individuals to seek a judgment against a fiduciary (such as a guardian, administrator or conservator) and a surety in the same action. Case law also makes clear that, through all the revisions, the statute has continued to prescribe specific, limited situations where a judgment against the fiduciary is not necessary. Nothing about the drafting of the at-issue statute or the revisions to the analogous statutes indicates a loosening of the long-standing requirement that a judgment be obtained against the fiduciary (which would include a conservator) in order for the surety to be held liable.

---

[7] Notably, the Section that immediately followed Section 49–237, began with the phrase: "When judgment shall be obtained against *principal and sureties*, as provided in the two preceding sections," which further indicates that the legislative intent was to require that, in the usual case, judgment be obtained against the guardian and that it could not be obtained against the surety alone. See Ga. Code § 49–238 (1933).

Finally, Plaintiff cites no caselaw to bolster her contention that she has discretion over whether to include Moore in this action. Plaintiff argues that In re Gladstone, 798 S.E.2d 660 (Ga. Ct. App. 2017), *reversed in part by* 814 S. E. 2d 1 (Ga. 2018), supports her position. (Doc. 89, pp. 5–6.) In that case, the Court of Appeals of Georgia upheld the probate court's judgment against a conservator and its surety because the conservator had breached his fiduciary duty. In re Gladstone, 798 S.E.2d at 664. However, in that case, both the conservator and the surety had appeared before the probate court, and the probate court had "enter[ed] judgment" against both parties. Id. at 662. Thus, rather than supporting Plaintiff's position, this case bolsters the determination that Georgia law requires a plaintiff to include the conservator in a suit when seeking judgment against the surety. Indeed, Plaintiff has not provided the Court with even one Georgia case where a plaintiff obtained a judgment against a surety without also obtaining a judgment against the conservator (or other fiduciary) or showing circumstances that met one of the exceptions outlined in O.C.G.A. § 29–5–46. For all of these reasons, the Court finds that, under Georgia law, Plaintiff cannot obtain a judgment against Defendants because she has not included Moore in this action, has not shown that any of the exceptional circumstances listed in the statute exist, and/or has not shown that she has previously obtained a judgment against Moore. Consequently, Defendants are entitled to summary judgment on Plaintiff's claims.

## II.     Plaintiff's Motion to Amend Her Complaint

Plaintiff also filed a Motion for Leave to File an Amended Complaint under Federal Rule of Civil Procedure 15(a)(2). (Doc. 93.) In the Motion, Plaintiff seeks to amend her Complaint because "[t]he original Complaint was filed with an incorrect code section relative to Defendants'

bad faith" [8] and also because she wants to add a factual allegation that Moore "testified under oath [in his deposition] that he mismanaged and misappropriated the funds of Orita Wells Coney" by "not document[ing] the expenditures he'd taken out; [by] not organiz[ing] and produc[ing] receipts for those expenditures; and [by selling] personal property of 'Coney' without court approval." (Id. at pp. 1, 4.) Under Rule 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[H]owever, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262–63 (11th Cir. 2004). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing Hall, 367 F.3d at 1263).

Plaintiff's claim for relief due to Defendants' alleged bad faith is based on Defendants' refusal to pay her the value of the surety bond. (See doc. 1-1, p. 12 ("Defendants have denied Plaintiff's reasonable and valid claim to pay the bond and such denial and refusal was done in bad faith.").) Here, as the Court has already explained, summary judgment in favor of Defendants is appropriate because, pursuant to Georgia law, a surety cannot be held liable for payment on a

---

[8] In her original Complaint, Plaintiff cited O.C.G.A. § 33–4–6 in support of her claim for damages for bad faith refusal to pay. (Doc. 1-1, p. 12.) That statute, however, governs the liability of an insurer for its bad faith refusal to pay on a loss covered by a policy of insurance. See O.C.G.A. § 33–4–6(a). Plaintiff does not identify the specific Georgia statute that she would like to employ to seek bad faith damages against Defendants. (See generally doc. 93.) The statute that authorizes bad faith damages against a surety is O.C.G.A. § 10–7–30 (entitled "Refusal of corporate surety to remedy default covered by contract of suretyship; damages and attorney's fees"). See Hicks v. Gabor, 841 S.E.2d 42, 52–53 (Ga. Ct. App. 2020) ("[I]f [plaintiff] wished to raise a bad faith claim against [the surety] for failing to meet its obligations under the suretyship, she was required to bring such claim pursuant to O.C.G.A. § 10–7–30, the specific procedure and penalty created by the General Assembly for such a claim.").

conservator's bond unless: (1) the conservator has been sued in the same action; (2) a judgment has already been obtained against the conservator; or (3) one of the special circumstances prescribed in O.C.G.A. § 29–5–46 is shown to exist. Because, for the reasons described in the previous subsection, Defendants cannot be held liable on the bond, Plaintiff cannot prove that they acted in bad faith when they refused to pay the bond amount to her in response to her pre-suit demand letter. Accordingly, amending the Complaint to include the relevant "bad faith" code section would be futile.

Likewise, the additional factual assertions about Moore's alleged mismanagement and misappropriation of Coney's property—even taken as true—would not save Plaintiff's claim from summary judgment and, thus, adding them into the Complaint via amendment would be futile. As explained in the previous subsection, regardless of whether Moore mismanaged and misappropriated Coney's property and thus breached his fiduciary duties, Defendants are entitled to summary judgment because Plaintiff has not named Moore as a defendant, obtained a prior judgment against Moore, or shown that any of the special statutory exceptions apply.

In addition to being futile, Plaintiff's Motion to Amend is also untimely. Plaintiff filed her Motion to Amend on March 2, 2021, (doc. 93), almost three years after the Answer was filed, (doc. 10). Southern District of Georgia Local Rule 16.3 states that "[a]ll motions in civil cases wherein a party seeks . . . to amend the pleadings under Federal Rule of Civil Procedure 15 shall be filed within sixty (60) days after issue is joined in the case by the filing of an answer." Plaintiff has failed to provide good cause for extension of that deadline, and Courts in this district have routinely cited the violation of this Local Rule as a reason to deny a motion to amend. See, e.g., Brown v. Johnson, No. 1:09-cv-144, 2010 WL 4553442, at *3 (S.D. Ga. Nov. 3, 2010) (finding plaintiff's request to amend her complaint to be untimely because she sought to amend her complaint more

than a month after the deadline set by Local Rule 16.3); Inash Corp. v. Am. Dairy Queen Corp., No. 6:88-cv-103, 1990 WL 622095, at *4 (S.D. Ga. Aug. 28, 1990) (finding plaintiff's motion to amend to be untimely because it violated the local rule).

For all these reasons, the Court **DENIES** Plaintiff's Motion to Amend. (Doc. 93.)

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants Harleysville Insurance Company a/k/a Harleysville Mutual Insurance Company and On Your Side Nationwide Insurance Agency Incorporated's Motion for Summary Judgment, (doc. 82), and **DENIES** Plaintiff's Motion for Summary Judgment. (Doc. 84.) The Court also **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 93.) The Court **DIRECTS** the Clerk of Court to enter an appropriate judgment in favor of Defendants and to **CLOSE** this case.

**SO ORDERED**, this 14th day of May, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA